President of the United States of America 1 Is counsel for the appellee here? Mr. Brinkman, you can come to counsel table, please. And you must be Mr. Polizzi. All right, so our second case for this morning is Wozniak against Adesita and others. And we are ready for you, Mr. Polizzi. May it please the court. We are on appeal from the central district's ruling to dismiss Professor Wozniak's claims of First Amendment violations and due process violations against the university and university employees. For the sake of the due process claims, I'd like to focus on those up front. Due process requires four elements, the notice, the opportunity to receive the defendant's evidence, the opportunity to tell your own story, and also an unbiased hearing or an unbiased decision maker. I want to focus on the last element of that. As you can see from our brief, a lot of what we focus on in this area is related to counsel for the Board of Trustees, Christopher Wilson. Christopher Wilson was appointed by the University of Illinois to advise them with regards to the... Could I just ask you as you go forward with this argument to bear in mind that compliance or noncompliance with the University of Illinois' rules is really neither here nor there for the 14th Amendment. As you said, there are basic constitutional requirements, which is the only thing we would be focusing on. And secondly, I certainly read all of your discussion of Mr. Wilson, but the Board of Trustees has a decision maker here, not Mr. Wilson. So if you could explain how somehow whatever was in Mr. Wilson's situation tainted the Board, that would be helpful. There's direct evidence in the deposition testimony and also in the emails that we received related to the case that show Mr. Kennedy, who was chairman of the Board of Trustees at the time, testified in deposition that at the day of the actual hearing, the Board had met, but they did not render a decision. In fact, he said they kept themselves in a box for the period... Why isn't that a helpful fact? I couldn't understand. The Board has this huge record from the CAFT hearing, and the Board has the four hours of testimony, etc. The Board's got whatever it accumulated during the hearing, and instead of just rushing off and rendering a decision, they take some time. This court often takes some time. We get written submissions. We have what's all in all a relatively brief oral exchange with people, and it can be months before we come out with something. Hopefully, that means we've been thinking about it. I don't have any issue with regards that they took another four or five weeks to render a decision, but I think when you look at the facts in the testimony, it wasn't the Board that rendered a decision. Mr. Kennedy spoke to the fact that the Board did not communicate in between. They issued an opinion on the very next meeting, and in between, Mr. Wilson's billing records show that he was working 50, 60 hours on the case, and yet they met on the very day, issued their opinion on that day, in which Mr. Wilson's working approximately five hours. They meet for a few hours, and the opinion gets rendered that day. Kennedy testified that they didn't write the opinion. It's our point, based on the facts of the record, that Wilson issued the opinion, and why that matters is, first of all, he's not the Board. Are you saying then that every opinion issued by a district court judge that was drafted by the judge's law clerk is invalid? Not at all, Your Honor. What I'm saying is, Wilson, who unbeknownst to Wozniak and his counsel- Wilson is hired by the university to represent it. And was represented to Wozniak and his counsel that he was advising the Board. While simultaneously, he's working with the President's office. He helped draft the President's statement of charges that went to the Board. Why are they on different- He's representing the Board. Why can't he prepare a draft opinion? It's within the context of him also presenting the evidence on behalf of the President's office, drafting their statement of charges, revising it, with the help of CAF Chairman Johnson. Johnson, as well, had a responsibility at that point to render the CAF's opinion as to what should be done. And instead of rendering the facts and findings that Johnson's responsible to do, he's simultaneously working with Wilson, communicating with Wilson, and then stating to his own CAF team, there's no way Wozniak can get a fair hearing in four hours. And moreover, that he's going to give a different presentation to the Board if the President's statement doesn't get changed because it was offensive to the CAF at that time because it denigrated the work that they had done. So Wilson brokers a meeting with Johnson in the President's office, and in that meeting, subsequently thereafter, him and Johnson then draft the President's statement. So Wilson's playing the role of drafting the President's statement. He's drafting the Board's opinion towards the statement without Board input because the Board's not communicating about it. Go back to the beginning of the case. In February, Wilson is drafting the charges that go to the Board with the help of helping the President's office refer the charges. Simultaneously, Wozniak's counsel is reaching out to Wilson, who's been identified as the Board advisor, to say, what are the procedures going to be? Wilson at that time is communicating with in-house counsel to set the procedures with no input from Wozniak's counsel. They give him 40 minutes to defend against all charges that will be brought. He's also pressing on what's going on with regards to these additional new charges, and Wilson again doesn't respond. It's not until June that Wilson gets the feedback that maybe the Board will consider it. Several months before the hearing. And then, again, the expectation is that CAFT will issue findings based on the actual hearing, which had exonerated, brought back over 11 or 12. CAFT has already done its work. Calling the CAFT's decision an exoneration is extraordinary. I'm sorry, you're right. Calling the decision of the CAFT an exoneration is extraordinary. Well, I said of 11 of the 12 charges that were brought, not overall. But it's not exoneration. It's one thing to exonerate. It's another thing to say, we're very troubled by these things, but we don't think in the aggregate they warrant dismissal. Could I, counsel, could I ask more generally, in your brief, you really emphasize a great deal of a disagreement between the Faculty Committee, the CAFT, and the University Board. I don't understand what constitutional significance that disagreement has. Well, again, the CAFT just renders a recommendation to the Board. Right. So it's really much more about Johnson communicating independently to his members that he's going to make an alternative recommendation, and then meeting with Wilson, and then presenting to the Board a recommendation that doesn't involve any of the CAFT's real work. Johnson testified that they hadn't... The Board knows that the CAFT had recommended against termination. The Board has the whole record in front of it, so it knows that there's been some back and forth about this. Well, Johnson is simultaneously telling the Board in his submission or his report, we're not going to do our duty here and be a fact finder. We're going to pass that on to you, and you're allowed to do that. If the Board has those facts, again, why isn't that just an internal detail of University of Illinois procedure that's not of constitutional significance? What this feeds into constitutional significance is basically that the procedures that Washington was supposed to be getting should be neutrally applied. Instead, you're having ex parte meetings with... So stop. I'm sorry. Could you... You just said that so fast, I didn't understand what you said. So according to due process on a constitutional level, the procedures are supposed to be neutrally applied. Instead, what you have is you're having secret meetings between the President's Office, Wilson and Johnson, which Tagg, who was Wasniak's counsel, is unaware of. He doesn't know that they're basically working together for their respective submissions. Is there any evidence that Attorney Wilson had conversations with counsel for Mr. Wasniak without the University counsel being present? Mr. Wilson testified that he had had conversations with Mr. Tagg, who was counsel at the time, but we know from the record that the procedures had been set by... He talked with both sides. Yeah, but the core elements of what they're talking about, the procedures had already been set. The idea that they could bring new charges had already been set. Tagg was not involved in any of the substantive... But Judge Hamilton's making a different point, which is that Mr. Wilson talked sometimes to Mr. Wasniak's lawyer, and he talked sometimes to the University people. It was no secret to Mr. Wilson that the University, by this time, was seeking the revocation of tenure and the dismissal of Mr. Wasniak, right? This was on the table. True. Could I get away from some of the details of the University procedures a little bit and just ask about a matter of federal civil procedure? Sure. You have challenged the denial of your motions to compel discovery. Those were decisions made by the magistrate judge in the case? That's correct, Your Honor. Did you appeal those to the district judge? We didn't appeal it directly to the district judge at that time. And how are they reviewable under Rule 72A, which says that if you don't do that, you've waived the objection? Well, we appealed basically the final judgment of the district court, which basically incorporates the underlying magistrate decision. No, that doesn't. That's not sufficient. If I'm the district judge, I would be extremely upset if the Court of Appeals were to reverse on the basis of a discovery decision that the magistrate judge made that was never brought to my attention. And that's what Rule 72A prevents. Another matter that is relevant, at least to me, is that I didn't see anything in your brief that responded to the qualified immunity defenses with respect to due process. And I really didn't see anything in your brief that showed a case that would show that these defendants should have recognized that what they were doing was violating your client's First Amendment rights. Could you address the qualified immunity defenses? Well, with regards, let's start with the First Amendment. We did mention within the briefs that they were aware that First Amendment issues had been raised throughout the proceedings. What, of course, they were very conscious of that. And in fact, the decision reflects that in the distinction between what is recommended and what is required of your client. But what case law would have put these defendants on notice that anything they were doing with respect to your client violated his First Amendment rights as clearly established? Well, the case law provides that if they- And bearing in mind that under Anderson against Creighton and a slew of other cases, it's got to be particularized to the situation. Well, again, the case law says if they are aware of the violations and then turn a blind eye to them, that they're allowed then to- No, no, no. That's correct, but that presumes a violation. That's responding to superior- What's the notice? What cases notify them that their actions toward Professor Wisniak violated his First Amendment rights? In a particularized way, as Chief Judge Wood indicated. Like I say, they had spoken about the issue of First Amendment violations independently, and they were aware that they had been raised by his counsel at the CAF hearing earlier and then later before the BOT. But Mr. Police, I have to say- That simply does not satisfy a qualified immunity test. That just doesn't. And I would add, I was startled. Perhaps my colleagues were as well with respect to the First Amendment argument that your brief does not, neither of your briefs, neither your opening brief nor your reply brief, so much as cites Garcetti against Zavallos. And the district court talks about it at some length, as do your opponents. If this is a personal grievance of Professor Wisniak, you're out the window anyway from a First Amendment point of view. And the fact that you didn't explain why, under that rule, this somehow is a matter of public concern is deeply concerning to me. We spoke to the fact that Wisniak was complaining about the improprieties in the- Garcetti has a long discussion about, in that case as well, the person was trying to say, yeah, maybe it looks as though it's grounded in personal things, but actually, I was trying to raise a broader point. There are a lot of cases that work with that line and you don't address them. Again, he raised it. His website is replete with complaints about the investigation. And it's all about this award he didn't get. Specifically, the reason he engaged in the investigation that were related to improprieties is about the award. But as he says, his rationale for doing so, it wasn't about not gaining the award. The rationale for doing so is because he had an issue with the university not respecting the democratic rights of the student body to decide who they wanted to decide. And he had on his own website, there's individuals who have responded to that, who basically join in on that same discussion, just agree with him that, yes, the university should not be doing this. Can I just very briefly ask you, counsel, you asserted in your reply brief that the university has a legal obligation if it thinks a FERPA violation has occurred to notify the student in question. You cited a statute that doesn't actually seem to support that. What's the support for that assertion? With regards to FERPA, as we're looking at the university policies for the sake of what are they required to do if a FERPA violation occurs that they're supposed to reach out and then act on the FERPA violation that they have knowledge of? Just the university policy, it's not the statute. Not the statute. Well, we cited to the FERPA statute itself, but it's the university policy that states it. All right, you need to save the last bit of your time. Thank you. Mr. Brinkman. I mean, if he wants it, you need to save it. Yeah. Thank you, Your Honor. William Brinkman on behalf of the nine individual appellees in this case. Your Honor, there are three primary issues on appeal before the court. First is whether a question of fact exists on the claims of First Amendment free speech violations. Second, whether there is a question of fact on the claim of due process violations. And third, whether summary judgment on the qualified immunity issue was proper. The appellant claims that there was First Amendment violations on the basis of retaliation for firing him by the Board of Trustees for his speech, and he also claims prior restraint on his free speech. The threshold issue is whether these claims address speech that was protected speech. Here, the speech focused on the claim that Dr. Wozniak was wrongfully denied a teaching award. His speech mainly consisted of postings on the internet where he repeatedly and persistently related his investigation of the process by which he was denied the award, despite getting the most student votes. His postings contained private student information and included repeatedly referring to a female student who he identified as the president of the student organization. Coming into his office where he questioned her and she began crying. He claims that his speech was a matter of public concern because it related to university staff and faculty interfering with the student award process, but he had no need to publish any student private information if that was the case. He only talks about in his expression the award process as it relates to him. He does not talk about it in general within the college. He does not talk about it in general within the university. The district court found that this was a false issue because there was no information, there was no evidence whatsoever that the faculty or staff interfered with this award process. I wonder if I could ask you a question about Mr. Wilson. If I'm understanding Mr. Polizzi's argument correctly, what he's essentially saying is that this is the same as if we had perhaps, I don't know, a federal trade commission hearing at which instead of what the commission does, which is to create separation of function at the administrative level so that counsel that's prosecuting a charge before the commission, whether it's an unfair consumer deceptive practice or whatever it may be, is separated from the commission. The commissioners have their own advisors, their own attorney advisors and the like. He's essentially saying here's the board, the decision maker being advised by Mr. Wilson at the same time as Mr. Wilson is representing one of the two parties before the board, the party being perhaps the president versus Professor Wozniak because there is a prosecuting arm so to speak and that's the president. Can you talk a little bit about whether Mr. Wilson was blurring these functions to a degree that we should be concerned? Yes, Mr. Wilson was hired I believe in January of 2013 at a time when it was determined that this matter would be referred to the board of trustees for final decision. He was hired to represent not just the board of trustees but all of the employees at the University of Illinois. But is that okay if the board of trustees is going to be the decision maker? Should it have one and the same attorney as whoever it may be, a dean, the president who is taking the position that very valuable rights should be taken away from the professor, namely his tenure and his job? He was not representing a dean or a president or any of the individual defendants in this case with respect to advocating for dismissal or non-dismissal. His role was to assist in developing procedures that would be used to facilitate the hearing for the board of trustees. So you're saying that his conversations with the president and with for example Johnson who I guess by that time had become head of the CAFT were under the broad umbrella of developing these procedures and representing the board? Is that your position? It is. And part of the procedures that were developed were the pleadings that were to be submitted to the board of trustees. And this was done as Justice Hamilton mentioned in meetings that were ex parte. Just judge will do. In our course we call ourselves judges. He had ex parte meetings with Laura Clower who was representing the president. He had ex parte meetings with Mike Tagg who was representing Professor Wozniak. He had meetings with both attorneys together. One of the procedures insofar as presenting the evidence to the board of trustees was that the president would draft a president's statement in support of the charges. That was drafted by the president and Laura Clower. It was not drafted by Chris Wilson. Then there was also a requirement under Article 10 that where the CAFT committee makes a report the board will invite a member delegated by the committee to give a statement at the board of trustees hearing. Eric Johnson was delegated. He was the chair of the CAFT committee at that point. So what's the talk about all this negotiating what the substance of that report was going to say? Chris Johnson, I'm sorry, Eric Johnson testified that he saw the initial statement in support of charges by the president that it contained information he considered inaccurate with respect to the CAFT report. He brought that up with the president. Chris Wilson met with the three of them to facilitate a change to the president's report that more accurately reflected the CAFT report. Let me put a little spin on what you just described, which is that Wilson is orchestrating the prosecution. What the prosecution is going to look like so that it will be coordinated and avoid undue friction when the university will present a united front against Professor Wozniak before the board. Now, that's a pretty negative presentation of that, but is it unconstitutional? I would have thought your position would be simply that the constitution does not require the precise demarcation of these different functions that we often have by statute, for example, in administrative agencies, and often do not have. Well, the issue is on due process whether or not he had a fair hearing. The information in the president's statement was shared three and a half weeks before the hearing with Mr. Tagg, counsel for Professor Wozniak. He filed a response to the president's statement. There were further pleadings that had to do with the conduct of Professor Wozniak that was occurring after the CAFT report. There were further pleadings that were submitted by both sides on that. I think as the court has observed, the board of trustees had the full record before them. Christopher Wilson did not advocate at the board of trustees hearing on any of the presentations by Mr. Tagg or by Ms. Clower, the opposing parties in the case. There's no indication that any member of the board, other than whatever Chris Wilson was saying to them, that any member of the board had any kind of stake in what went on. That's correct. Counsel, can I ask you about how far this matter of public concern argument versus private concerns goes on the First Amendment issue? Let's suppose you've got a tenured professor who has evidence that, well, it doesn't matter whether they're tenured or not, but a professor has evidence that a student was cheating. The professor flunks the student, reports the cheating to appropriate disciplinary authorities. The university looks into it, disagrees, changes the grade back to something acceptable, and erases the discipline. The professor thinks that's wrong, it's a terrible injustice, and it's been done because the parents of the student are major donors to the university. Is that something that the professor could take public? He certainly could take it public. The question would be whether or not, if he's disciplined for doing that, it would be a violation of his free speech. Yes, that's my question. Thank you. Yes. I think there's many components to the analysis there. I think it is a matter of public concern if the university is changing grades because they're getting big donations from people, and that's similar to what's going on with the scandal in people getting their children into schools. Why does it matter whether it's a matter of public concern given Garcetti against Zavallos? I think what Mr. Zavallos did was certainly a matter of public concern, but the court held that because it was part of his job duties, it wasn't covered by the First Amendment. Judge Hamilton's case, grading is part of the duties of a professor. Why isn't Garcetti controlling? I was puzzled by your brief a bit, because although you mentioned Garcetti, you don't seem to rest substantially on it. The focus on whether his speech is part of his duties as an employee has to do with whether or not he's speaking as a public official or as a private person. It certainly governs the bottom line. Maybe it's in box A versus box B, but it has everything to do, and the Supreme Court has followed up on this. Is this part of your job duties? We've had cases. Go testify in response to a subpoena. That's not part of your job duties, but if you're reporting up the chain that you see problems in the jail, for example, that that is part of your job duties. Your whole brief proceeds pretty much as if Garcetti had never been decided. That's what puzzles me, and your answer to Judge Hamilton was pretty much as if Garcetti had never been decided. I wonder, is this part of the litigation strategy? Maybe it's just an oversight by me. I don't know. It's not part of the litigation strategy. In this case, all of the speech by Professor Wozniak concerned the effect of the student award process on him personally. None of it concerned... Would you be able to make the argument, because this wasn't about grading. This wasn't about the content that was going to be taught in his classes. It wasn't about other sorts of things of that nature. It was instead about this somewhat extracurricular award. The university could have no such awards if it wanted to. The university could have lots of them. The university would have different criteria, so maybe there is some argument that it's outside the scope of his normal teaching responsibilities. That's what the district court found in this case, that he was speaking as a private citizen on this matter, and that his speech... Right, except the district court wasn't putting it in the Garcetti framework, because if part of being a professor, and I'll just speak personally, wearing one hat or another since 1981, shockingly enough, I've been a professor of some type. There are all kinds of... This is the time of year, actually. This is award time of year. Do you think somebody wrote a great paper? Maybe the students reciprocate with an award for the best first-year professor in the law school or something. It is, broadly speaking, part of the institution's life. If it is, then whatever he likes or doesn't like about it is part of his job, and the Garcetti against Zabala's case takes care of it. You can't recover on a First Amendment theory. Yes. Once again, the finding by the district court in this case was that none of the speech involved anything beyond the student award process denying him the award. It was not protected speech, and the retaliation, therefore, was held against him. With respect to prior restraint, I just want to cover this briefly in the time I have left. There are two claims of prior restraint in this case. First, that the Kaft report told him that he couldn't, in the future, talk about the student crime. Secondly, that Barbara Wilson, who worked in the provost's office, required him to take down matters on the internet that he posted when he posted the transcript and all of the evidence at the Kaft hearing. The Kaft committee is an advisory committee to the president of the university. It is not a decision maker. It carefully worded its report to say that, although they cannot compel, they recommend Professor Wozniak take down the information with respect to the student crime and the student's identification. For that reason, there was no prior restraint by the Kaft committee. With respect to Barbara Wilson, her correspondence with the plaintiff to take down information he posted was after the fact of the expression by Professor Wozniak. Okay. Thank you very much. Mr. Polizzi, I think you have about a minute left. I'll round it up. With the minute I have, I want to speak to the Garcetti issue. In this particular case, student A was not his student at the time. She was the president of an independent fraternal organization. In the teaching award, that entity was not a university-based organization. He was complaining about the university interfering with his independent organization. It wasn't just part of his job, per se. It had nothing to do with him interacting with a student that was his at the time, or anything related to his current job functions. Again, the university supports this award by having an award ceremony, et cetera, but it wasn't part of his direct job function. All right. Is that it? Otherwise, I just wanted to make a brief mention of Mr. Wilson and his role. At that position, he testified that he represented all the university employees. Therefore, any communications with any of them would have been privileged. They were not allowed to get any kind of information towards any of what he said related to that. He revised the president's statement that eventually, the final statement that came to the university was not the one that Laura Clower wrote. She wasn't even aware that it had actually been revised by Wilson, especially. I think we have your point, so thank you very much. Thanks to both counsel. We'll take the case under advisement. Thank you.